■ In the Matter of Van Euclid Company, Respondent, v Edward H. Sargent, Jr., et al., Constituting the Planning Board of the Town of Bethle-

hem, Appellants, and MARTIN L. BARR, Intervenor-Appellant. — Appeal from a judgment of the Supreme Court at Special Term (Pitt, J.), entered December 16, 1982 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Planning Board of the Town of Bethlehem denying petitioner's preliminary plat approval application. Petitioner Van Euclid Company sought approval from respondent Planning Board of the Town of Bethlehem to develop a residential subdivision of 36 single-family houses on approximately 21 acres of land, said area being identified as "Norman's Gate". Petitioner also owns lots Nos. 48 and 50 on Euclid Avenue in said town which are not part of the proposed subdivision. These two lots each contain a single-family residence which petitioner intends to remove to accommodate an entrance road from Euclid Avenue to Norman's Gate. The proposed subdivision is adjacent to an existing residential subdivision which had been developed pursuant to a 1937 subdivision map, known as the "Boutelle" map, containing restricted covenants within a common scheme. In support of its application, petitioner submitted a traffic study, numerous maps and statements of a land surveyor and landscape architect. Further, a local real estate broker testified that current homes in the immediate neighborhood should enjoy a normal increment in value after the subdivision was completed. Opposition to the proposed subdivision was voiced by neighboring property owners, one of whom was intervenor Martin Barr, who stated that they had purchased their homes because of the quiet and rustic character of the neighborhood. The neighbors were particularly concerned about increased traffic and a change in the character of the area. Significantly, one opposing witness introduced an engineer's report describing the instability of the soil along the Normanskill Valley which abuts the proposed subdivision. On August 10, 1982, respondent board rejected petitioner's application holding (1) that the subdivision would violate section 276 of the Town Law, (2) that the subdivision would violate the restrictive covenants in the deeds of the adjacent property owners whose lands had previously been developed according to the Boutelle common design or scheme, (3) that the traffic study presented by petitioner was not comprehensive and definitive enough with respect to the Euclid Avenue/Delaware Avenue intersection, (4) that the proposed access road would change the neighborhood, and (5) that the information regarding the stability of the slopes fronting the Normanskill Valley was insufficient. Petitioner commenced this CPLR article 78 proceeding to vacate and annul the determination. Special Term held that respondent board's denial of petitioner's application was arbitrary and capricious and vacated the determination. This appeal by respondent board and intervenor Barr ensued. Special Term was clearly correct in holding that petitioner's proposed modification of lots Nos. 48 and 50 on Euclid Avenue so as to provide an access road to the Norman's Gate subdivision did not violate section 276 of the Town Law. Subdivision 1 of section 276 was amended in 1956 to provide for planning board approval of the development of "entirely or partially undeveloped" plots. There is no statutory prohibition of approving new streets. The legislative intent in amending section 276 was to extend the planning board's jurisdiction to include subdivisions previously filed but not yet developed in order to prevent developers of land covered by old filed maps from avoiding modern subdivision regulations. Here, petitioner merely seeks to develop land, lots Nos. 48 and 50, that is covered by the old Boutelle map filed in 1937. Such an application is in harmony with amended section 276 of the Town Law. Next, while we hold that Special Term erred in summarily dismissing intervenor Barr's contention that the proposed access road would violate restrictive covenants contained in the Boutelle map of 1937, on the ground that Barr lacked standing, we nevertheless conclude that respondent

board was incorrect in relying on this ground for support of its decision to reject petitioner's application. Such restrictions that were contained in the 1937 map are binding on all subsequent property owners in the previously approved subdivision and may be enforced by the owner of any parcel located within the common scheme, including intervenor Barr. However, an examination of petitioner's proposal demonstrates that the proposed access road would not violate any restrictions imposed by the Boutelle map. Petitioner is not proposing to build a structure on lots Nos. 48 or 50 that is not a "detached single family dwelling", an activity proscribed by the restrictive covenants. To the contrary, he intends to remove structures already in place so as to modify the lots for use as a roadway. There is nothing in the 1937 restrictions that would prevent this. Further, an access road to another subdivision similar in character maintains the rustic character of the entire area. Turning to the issue of traffic control, we find that Special Term was correct in holding that respondent board acted arbitrarily and capriciously in relying on evidence of traffic volume counts by residents unsupported by expert proof. Petitioner presented an updated professionally prepared traffic report which concluded that the traffic generated by 36 homes is relatively minor in relationship to traffic flow in the area and will not create any safety or capacity problems. It was also found in the report that newly installed traffic signals allow sufficient critical time gaps for vehicles to exit Euclid Avenue. Further, respondent board never questioned the expert's finding of minimal impact. We also reject respondent board's finding that the proposed access road to Norman's Gate would change the character of the neighborhood. The board is empowered to grant preliminary and final approval of subdivision plots "[f]or the purpose of providing for the future growth and development of the town and affording adequate facilities for the housing * * * comfort * * * safety, health and welfare of its population" (Town Law, § 276, subd 1). While, in exercising its authority to grant or deny approval of a subdivision, a planning board may consider the impact of the proposed development on adjacent territory (*Matter of Pearson Kent Corp. v Bear*, 28 NY2d 396, 398; *Matter of Ozols v Henley*, 81 AD2d 670, app dsmd 54 NY2d 1023), a denial must be premised on clear findings of deleterious changes that adversely affect the adjoining area. Here, the neighboring area consists of single-family residences along a few residential streets. A local real estate broker testified that neighboring houses should have the normal increment of value. In the environmental assessment form, respondent board itself reported that the proposed subdivision would not have a substantial environmental impact. We find nothing in the record warranting an inference that the character of the neighborhood would change if Norman's Gate was approved. Finally, we turn to the remaining ground raised by respondent board as a basis for denying petitioner's application, i.e., that the information regarding the stability of the slopes confronting the Normanskill Valley was insufficient. While we cannot say that this determination was arbitrary and capricious, since the board was presented with some evidence of soil instability, it is unclear whether respondent board would have denied petitioner's application for preliminary plat approval solely upon this basis. Accordingly, since the other four grounds relied upon for denying petitioner's application have been held to be invalid, the matter should be remitted to respondent board for the purpose of exercising its discretion on the sole remaining ground regarding the soil stability of the slopes fronting the Normanskill Valley. In view of our decision to remit this matter to respondent board for reconsideration of the soil stability issue, we further direct that respondent board open up the record to allow the parties to introduce additional proof on this question. If such additional proof warrants, respondent board could vote that the proposed project might have a significant effect on

the environment which would require the preparation of an environmental impact statement. Decision withheld, and matter remitted to the Planning Board of the Town of Bethlehem for further proceedings not inconsistent herewith. Mahoney, P. J., Main, Casey, Mikoll and Yesawich, Jr., JJ., concur.